### SAHR v CHESAPEAKE & OHIO RAILWAY COMPANY

Ohio Appeals, 2nd Dist, Franklin Co

No 3371. Decided Sept 23, 1941

Arthur A. Wiles, Columbus, and Thomas A. Doucher, for plaintiff-appellee.

Wilson & Rector, Columbus, for defendant-appellant.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment in favor of the plaintiff in the sum of $400.00.

Several errors are assigned but the brief of appellant is specifically directed to two: 1. Error in the general charge; 2. Excessive damages.

The pertinent facts are that on Thanksgiving Day, November 23, 1939, about 4:00 o'clock in the afternoon, Melvin Weinrich was driving the 1938 Chevrolet coupe of plaintiff to the east on Slack Road in Delaware County, Ohio. The driver was accompanied by two passengers, all of whom were in the one seat of the auto. Defendant company owned and operated its trains across Slack Road, and upon this road

there were three tracks, one known as a northbound, one a southbound track and the middle or third track, as a switch track. The driver of the automobile approached the crossing at a considerable rate of speed and at or about the time that he came to the approach to the crossing, the left front tire of the automobile blew out, as a result of which the driver lost control of the car and when it finally came to rest it had passed over both rails of the southbound track, both rails of the switch track and was quite close to the west rail of the northbound track and was a distance of some 22 feet from the railroad crossing. The impact of the automobile with the railroad tracks and other objects in the line of its movement was pronounced and resulted in injuries to both passengers in the car.

After the automobile had come to rest a number of persons in the vicinity of the crossing were attracted to the accident and some of them and the driver made determined attempts to remove the car from the tracks, but without success. After the attempt to remove the automobile from the tracks smoke was noted to the south which indicated the approach of a train. This smoke was testified to have been some three or three and a half miles to the south of the crossing. Mr. Evans, a neighbor, sent his wife over to their home to secure something whereby the oncoming train could be flagged and she soon returned with a large American flag which Mr. Evans took and walked down the track toward the oncoming train, a distance, according to his testimony, of eleven telephone poles from the crossing, which poles he estimated to be 150 feet apart. Mr. Meadows, another neighbor in the vicinity, went along with Mr. Evans. Mr. Evans stood in the middle of the track and waved the flag, when folded 2x2 ft., back and forth in front of the train when it was a distance of 1000 feet from him, and continued to so wave it until it was necessary for him to step off the track to avoid the oncoming train, and Mr. Meadows also stood by

the side of the track and waved his hat for the purpose of stopping the train. Both Evans and Meadows testified that no effort whatever was made to stop the train until it had reached a place approximately 200 feet from the crossing. The train passed the crossing, struck the automobile and carried it several feet, resulting in the damage complained of, and when the engine had come to a stop it was at a distance variously estimated at 580 feet (Evans) to 1231 feet (engineer and fireman).

The engineer testified that he saw the flag which Mr. Evans was waving, when 800 feet from Mr. Evans.

It was the testimony of the witnesses for the defendant that at the rate of speed at which the train was moving as it approached the crossing it could not be stopped within a lesser distance than one-half mile.

The engineer was the only member of the crew on the locomotive who admitted that he saw the automobile at any appreciable distance before it was struck, and he fixes the time when he observed the automobile as when he got past the man with the flag (Mr. Evans). This, according to Mr. Evans, was a distance from the automobile of 1650 feet. According to the more accurate testimony the distance was 1430 feet.

The negligence charged against the defendant company was failure to keep a lookout, failure to see the automobile stalled to the left of the crossing and upon its tracks, failure to stop the train, failure to perform any act to prevent damaging plaintiff's motor vehicle although it had been warned of the dangerous position in which the plaintiff's motor vehicle was placed.

The Court charged the jury as follows:

"* * * If in the exercise of ordinary care the engineer or other men on that train discovered, or should have discovered the danger, and if there was not sufficient distance from that time until they reached the place where the accident occurred, then any failure on

their part to stop the train before the accident occurred, would not render the defendant company liable; to illustrate in this way, if it took a half a mile to stop that train, if the exercise of ordinary care required a half a mile to stop the train, and the automobile could not be discovered with ordinary care and they were not warned at a distance of at least a half a mile, the fact that they did not stop their train in time to avoid this injury, would not be negligence on their part. Assuming that it takes a half a mile to stop the train, and it is for the jury to determine how long the distance it would require by the use of ordinary care to stop the train, and if ordinary care would not have advised them of the danger until they were within a quarter of a mile of the danger, even if they did not try to stop the train, there would be no actionable negligence in not stopping the train, because it would not be the proximate cause, because the accident would have happened anyway."

It is the claim of appellant that the court adopted an improper rule as to the obligation enjoined upon the defendant towards plaintiff's automobile wherein he said that "if in the exercise of ordinary care. the engineer or other men on that train discovered, or should have discovered the danger" the defendant might be held liable, and insists that the obligation to exercise due care only arose after the defendant, through its employees, knew of the dangerous position of the automobile on the tracks of the company. Supporting this position the defendant cites the rule as set forth in **34 O. Jur. 747, 22 R. C. L. 935,** and particularly **The Erie Railroad Co. v McCormick, 69 Oh St 53,** wherein it is stated:

"The concrete rule upon the subject is, that if one is upon the track of a railway company by his own fault and in peril of which he is unconscious, or from which he can not escape, and these facts and conditions are actually known by the engineer, it is his duty

to exercise all reasonable care to avoid the infliction of injury. It does not impose the duty to exercise care to discover that one so upon the track is in a place of danger, but it does impose a puty to be exercised upon actual discovery."

Plaintiff cites a number of cases wherein it is said that the obligation upon the railroad company toward persons or objects on the tracks is that of ordinary care. It should be noted, however. that all of these cases, except one, arose in situations wherein the person or object on the track was at a regular crossing of the railroad company and a roadway with a primary right to be upon and use the roadway. The rule in this situation is different from that which obtains when the person or object on the track is a trespasser or licensee and the rule is properly stated in the authorities heretofore mentioned. The one exception in the cases cited by the plaintiff is that of **The C. C. C. Ry. Co. v Elliott, 4 Oh St 474,** wherein the court enjoined upon the railroad company the obligation to exercise reasonable and proper care in running their engine to avoid injury to the cattle of the plaintiff. This case arose in 1852 at a time when there was no obligation upon the owners of lands abutting a railroad to fence their lands, and is basically grounded upon a situation which is different from that which now obtains respecting the obligation toward objects upon the right of way of railroad companies. However, it appears from the facts in the cited case that the operators of the locomotive knew of the presence of the cows and oxen which ran along the railway for some considerable distance, and did nothing more than to blow the whistle of the locomotive continuously to scare them off. The train finally ran over and killed the oxen. It is obvious that the peril to the animals was discovered by and known to the employees of the company and was no perversion of the rule to require them to exercise ordinary care after the discovery of the peril.

This is the rule which, as we understand it, now obtains. So in the instant case, if the automobile was on the tracks by an act of trespass or by mere license, then the obligation of the company to exercise ordinary care to avoid striking it began when its employees knew of the dangerous situation in which the automobile was placed.

While there is an element of technical trespass which may not be attributed to the plaintiff, nor to the driver of the car, yet in so far as the railroad company is concerned, this automobile was in the status of having been placed there by trespass, **34 O. Jur. 769, Wheeling & L. E. Rd. Co. v Harvey, 77 Oh St 235.**

But granted that the rule is as the defendant contends, the test which must be applied in considering the charge in the particulars challenged is whether or not under all the facts it was prejudicial to the rights of the defendant. Upon such consideration we have concluded that the rights of the defendant were not prejudiced even though in the abstract the trial judge should not have incorporated the language "or should have discovered the danger".

There were two well defined theories of the respective parties in this case. The plaintiff, that after the defendant knew of the dangerous situation in which the automobile was placed, it did not exercise due care to stop its train and avoid the collision; the defendant, that it was impossible after it was put on notice of the dangerous condition for it to stop its train because there was not sufficient space intervening between the place when it was put on notice and the location of the automobile.

We are of opinion that when the engineer on the locomotive knew of the presence of Mr. Evans with the flag in the middle of the track upon which the train was proceeding, such engineer was properly put on notice that some person or some object was in a position of peril or danger upon the track ahead.

It would be too narrow a conception of the rule to say that in the situation thus presented it was not sufficient to notify the employees of the company by the customary method of flagging a train down, but that it had a right to disregard this signal and to continue to move the train without obligation of due care or until it actually saw a person or object in a position of peril or danger. We do not understand that appellant urges this narrow interpretation of the rule.

If we are correct in our interpretation of the obligation enjoined upon the railroad company by its employees toward trespassers or licensees, then in this case the jury was not prejudiced by the charge as given, because of the factual developments. The engineer admits that he saw Mr. Evans flagging the train when he, the engineer, was 800 feet from Mr. Evans. He did not stop this train until he had passed the crossing by at least as much as 1000 feet and possibly as much at 1321 feet. So that, upon the admission by the testimony of defendant's own witness the distance within which the train was brought to a stop after the engineer knew of the danger ahead was not less than 3230 feet; that is to say, the 800 feet between the engineer and Mr. Evans; 1430 feet between Mr. Evans and the crossing, and at least 1000 feet from the crossing to the place where the locomotive stopped. According to the testimony of plaintiff's witnesses the train was stopped and therefore could have stopped within a distance of 1431 feet at most after the brakes were applied to bring it to a stop. So that upon the plaintiff's testimony and under the defendant's admission, if the jury believed plaintiff's testimony as to the distance within which the train stopped there was upon any view of the case, after the engineer knew of the danger ahead, ample time in the exercise of ordinary care within which to stop the train and to avoid striking the automobile.

On the other hand, if the jury accepted the testimony of Mr. Evans, the agents of the defendant company could not have seen him on the track when the locomotive was more than 1000 feet away. The distance from Mr. Evans to the automobile was 1452 feet. Upon this hypothesis the defendant upon its contention could not have stopped its train within the space ahead, although, its employees saw Mr. Evans flagging the train at the earliest possible moment and immediately ▆▆▆▆ began to make an emergency stop. This distance within which the train could be stopped was not the subject of conjecture and must have been determined by the jury to be within the limits fixed either by the plaintiff's or the defendant's witnesses.

The charge is not explicit in defining what was meant by the word "danger" when the Court said to the jury "if the engineer or other men on that train discovered or should have discovered the danger". Was danger synonymous with the situation presented at the time when the employees on the locomotive discovered or should have discovered Evans flagging the train, or discovered or should have discovered the automobile in proximity to the tracks? The charge a little further along indicates that the Court had in mind the presence of the automobile near the tracks when he used the word "danger". We are unable to conclude that it makes any difference in practical effect from the testimony, whether the knowledge of the danger began when the engineer observed Evans flagging the train or when he saw the automobile on the track because upon the defendant's theory, he did not have time to stop his train under either situation. According to plaintiff's claim, he did have ample time under either situation to stop his train in time to avoid the collision with the automobile.

Finally, if the obligation upon the defendant company to exercise ordinary care to avoid striking the automobile began only when it actually knew of the presence of the automobile in proximity to its tracks, even then, according to plaintiff's testimony and the physical facts, the plaintiff was entitled to recover if the jury accepted plaintiff's testimony, which it had the right to do. The engineer admits that he saw the automobile as he passed Mr. Evans. This was at a distance of 1452 feet. According to the testimony of plaintiff's witnesses he stopped the train within a maximum distance of 1430 feet after he applied his emergency brakes.

Upon any permissible interpretation of the rule defining the obligation of the defendant in the situation developed on the record, the verdict should be supported.

The charge as given under the facts in this case was not prejudicial to the rights of the defendant.

On the second question, the excessiveness of the verdict and judgment, we are satisfied that the jury's determination was well within the evidence. The testimony of the expert who fixed the value of the automobile before it was driven on the tracks and after it was struck by the locomotive would have permitted a much larger verdict. The extent of the injury done to the automobile before it was struck by the train was before the jury and according to several witnesses was little.

The judgment will be affirmed.

GEIGER, PJ. and BARNES, J., concur.